IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| WAGSTAFF & CARTMELL, L.L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 22-00461-CV-W-BP |
| | ) | |
| RONALD J. BEEMILLER, II, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER (1) DENYING MOTION FOR LEAVE TO FILE SURREPLY AND (2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS**

Pending is Plaintiff's Motion to Dismiss Defendant's counterclaims, (Doc. 35). Defendant has filed a Motion for Leave to File Surreply, (Doc. 51). For the following reasons, the Motion for Leave to File Surreply is **DENIED** and the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

According to the Amended Complaint, Defendant Ronald Beemiller and non-party Cecil O'Brate were shareholders in WB Services, LLC ("WB"), which filed for bankruptcy in 2016. In that same year, two lawsuits were filed against Beemiller. One was filed by O'Brate; his suit against Beemiller asserted several claims and sought $14 million in damages. The other was filed by American Warrior, Inc. ("AWI") and alleged Beemiller failed to pay a promissory note and sought more than $5 million in damages.

Plaintiff Wagstaff & Cartmell, LLP ("W&C") is a law firm. In 2017, Beemiller terminated the lawyer(s) he previously hired and retained W&C (or more precisely, lawyers from the firm) to

represent him. The terms and scope of that representation are set forth in an Engagement Letter Beemiller signed in October 2017. The Engagement Letter does not appear to be in the Record.

The two cases against Beemiller were dismissed without prejudice in 2020. Thereafter, a dispute arose: Beemiller claimed W&C committed malpractice in its representation, and he did not pay the balance of the fees he owed W&C. W&C initiated this suit asserting two claims, one seeking a declaration that it did not commit malpractice and another seeking the balance of the fees owed by Beemiller.

In his Amended Answer and Counterclaim ("Amended Answer"), Beemiller largely admits the facts set forth above. (Doc. 21, ¶¶ 1-24, 26, 30-31.) He also asserts counterclaims for negligence (really, legal malpractice) and breach of fiduciary duty; in so doing, he provides additional details (which are not contained in the Amended Complaint) regarding his allegations that W&C committed malpractice, as well as more details about the suits filed by O'Brate and AWI.

Beemiller was WB's majority shareholder, and O'Brate was a (or the) minority shareholder. (Doc. 21, ¶ 25(a), (c).) O'Brate was also the majority shareholder of AWI. (Doc. 21, ¶ 25(d).) Beemiller alleges the two suits against him were based, at least in part, on a promissory note "on which WB Services was named as the borrower" and Beemiller, O'Brate, and AWI "signed unlimited guarantees for repayment of the loan." (Doc. 21, ¶ 12.) More specifically, he contends O'Brate and AWI failed to pay the note, which damaged WB and caused the value of Beemiller's investment in WB to decrease. (Doc. 21, ¶¶ 25(e)-(f).) Once WB was in bankruptcy, O'Brate "purchased the bank debt . . . and filed suit against [Beemiller] personally, seeking collection on [his] personal guarantees." (Doc. 21, ¶ 25(h).)

Beemiller further alleges the scope of W&C's representation included defending those suits, instituting a counterclaim against O'Brate, and continuing to prosecute the counterclaim Beemiller's previous attorney asserted against AWI. (Doc. 21, ¶ 8.) Those counterclaims sought (1) damages for breach of contract, which allegedly decreased the value of Beemiller's ownership interest in WB, (2) damages suffered by WB due to tortious interference with business relationships, and (3) additional damages suffered by WB, for reasons that are not clearly stated. (Doc. 21, ¶ 9.)

Beemiller alleges W&C committed malpractice by leading him to believe his counterclaims "were essentially worthless because he lacked standing to bring the claims" while failing to suggest he instead bring a shareholder derivative action. (Doc. 21, ¶¶ 16, 21.) In other words, Beemiller does not dispute that he could not assert the claims (because the claims belonged to WB); instead, he alleges W&C should have suggested pursuing a shareholder derivative action as an alternative. "The filing of a derivative action was the proper course of action through which to defeat Mr. O'Brate's and AWI's defense that [Beemiller] lacked standing for the claims . . . ." (Doc. 21, ¶ 30; *see also* Doc. 21, ¶ 35.) Beemiller also alleges W&C negligently failed to advise him of his right of contribution from O'Brate and other guarantors. (Doc. 21, ¶¶ 16, 21.)

Despite W&C not raising the possibility of a shareholder derivative action, Beemiller's sister (an attorney) raised the possibility in September 2019. (Doc. 21, ¶ 32.) W&C then told Beemiller pursuing a derivative action was outside the scope of the engagement and the statute of limitations had run. (Doc. 21, ¶¶ 33-34.) In October 2019, W&C told Beemiller a settlement might be possible in both cases whereby no money changed hands and the cases were dismissed. (Doc. 21, ¶¶ 40, 42.) Beemiller agreed to this settlement only because he believed the statute of limitations on a derivative action had run. (Doc. 21, ¶ 43.)

3

Count I alleges W&C should have sought "derivative standing to pursue" claims seeking damages suffered by WB. (Doc. 21, ¶ 53.) It also alleges W&C "breached its duty to properly advise [Beemiller] of his right to contribution . . . before recommending settlement." (Doc. 21, ¶ 57; *see also* Doc. 21, ¶ 55.) Count II asserts these same actions breached fiduciary duties owed by W&C. (*See* Doc. 21, ¶¶ 64, 70.) W&C contends the counterclaims should be dismissed for failure to state a claim. The Court resolves the parties' arguments below.

## II. DISCUSSION

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure,[1] the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008); *see also Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). However, "the tenet that a court must accept as true all of the

---

[1] Defendant also invokes Rule 12(f) of the Federal Rules of Civil Procedure, which allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The Court believes Rule 12(b)(6) is the proper Rule in these circumstances because it applies to any party defending against a claim for relief, including a party defending against a counterclaim. *See, e.g., Countrywide Servs. Corp. v. SIA Ins. Co.*, 235 F.3d 390, 392 (8th Cir. 2000) (analyzing dismissal of a counterclaim for failure to state a claim under Rule 12(b)(6)'s standard). To the extent W&C seeks to strike paragraph 6, (Doc. 36, p. 8), the request is denied as unnecessary; the Court agrees the Amended Answer supersedes Beemiller's original Answer and Counterclaim, and the only document to be analyzed is the Amended Answer. With that understanding, there is no need to strike paragraph 6.

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Finally, in making this evaluation, the Court is limited to a review of the Complaint, exhibits attached to the Complaint, and materials necessarily embraced by the Complaint. *E.g., Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

The issue before the Court is whether Beemiller has adequately alleged W&C committed legal malpractice in failing to assert certain claims or arguments in the state suits filed against Beemiller. The malpractice claim Beemiller asserts here and the claims he alleges should have been asserted are state claims, so the Court looks to state law to evaluate the issues. The Court will apply Kansas law because the parties seem to agree that is the applicable law.

The Kansas Supreme Court has held a legal malpractice has the following requirements:

> (1) the duty of the attorney to exercise ordinary skill and knowledge, (2) a breach of that duty, (3) a causal connection between the breach of duty and the resulting injury, and (4) actual loss or damage. In addition to those four elements, to prove legal malpractice in the handling of litigation, a plaintiff must establish the validity of the underlying claim by showing that it would have resulted in a favorable judgment in the underlying lawsuit had it not been for the attorney's error.

*Mashaney v. Board of Indigents' Def. Servs.*, 302 Kan. 625, 639, 355 P.3d 667, 677-78 (2015) (cleaned up).[2] The parties focus on the final requirement and dispute whether W&C failed to present a claim that might have resulted in a favorable outcome for Beemiller in the underlying state litigation.[3] There are two claims identified in the Amended Answer: a shareholder derivative claim and a contribution claim. The Court will address each in turn.

---

[2] The parties do not separately discuss the counterclaim for breach of fiduciary duty. Given the factual basis for that claim, the Court's independent research suggests it is not distinct from the malpractice claim and is therefore redundant. *See Johnston v. Alberg,* 2014 WL 3732015, at *12 (Kan. Ct. App. July 25, 2014); *Townsend v. Patterson*, 2011 WL 3658379, at * 4 (Kan. Ct. App. Aug. 19, 2011). As a result, there is no need to discuss this claim separately.

[3] Beemiller sought leave to file a Surreply to correct "factually incorrect and/or misleading statements" in W&C's Reply Suggestions. (Doc. 51, p. 1.) The Court has reviewed the proposed Surreply, (Doc. 51-1), and concludes it primarily advances new arguments and authorities in opposition to the Motion to Dismiss. These arguments and

5

## A. Shareholder Derivative Action

"When a corporation has been injured by the actions of those in control thereof, . . . redress for such a grievance belongs to the corporation and must be brought as a derivative action, meaning one or more shareholders may bring suit on behalf of the corporation for harm done to the corporation." *Lightner v. Lightner*, 46 Kan. App. 2d 540, 547, 266 P.3d 539, 545 (2011). Moreover, shareholders cannot "sue for . . . the derivative harm to themselves that might arise from a tort or other wrong to the corporation." *Id*. A shareholder's sole recourse is to pursue a derivative action. To pursue a derivative action, the shareholder must, *inter alia*, ask the corporation's board of directors (or someone or some entity with similar authority) to pursue the action for the corporation, or explain why such effort was futile. *See Newton v. Hornblower, Inc.*, 224 Kan. 506, 511, 582 P.2d 1136, 1141 (1978); KAN. STAT. ANN. § 66-233a(b)(3). The shareholder must also demonstrate that any decision by the corporation's board not to pursue the claim violates the business judgment rule. *E.g., Gray v. Manhattan Med. Ctr., Inc.*, 28 Kan. App. 2d 572, 576-77, 18 P.3d 291, 297 (2001).

The Amended Answer does not plausibly explain how a derivative action would have been valid, nor does it explain how such an action could have been successful. Initially, the Amended Answer does not identify the actionable tort or wrong that was done to the corporation or provide any basis for believing any such claim was likely to succeed. Beemiller clearly believes O'Brate damaged WB – but he does not identify any legal claims that could have been asserted by WB against O'Brate or the factual basis for any such claims. Thus, the Amended Answer fails to establish a plausible basis for concluding Beemiller could have prevailed on a claim if it had been asserted.

---

authorities could have (and should have) been included in Beemiller's opposition to the Motion to Dismiss and presenting them in a Surreply is improper. The Motion to File Surreply is therefore denied.

The Amended Answer also does not plausibly allege Beemiller could satisfy the prerequisites for bringing a derivative claim on WB's behalf. WB was in bankruptcy, so any claim WB possessed was in the control of the bankruptcy trustee. Presumably, the trustee pursued WB's viable claims, and if the trustee elected not to do so (after Beemiller made a demand that the claim be pursued) that decision would have been subject to analysis under the business judgment rule. The Amended Answer provides no basis for believing any decision by the trustee not to pursue the claim would violate the business judgment rule, and thus provides no basis for believing Beemiller would have been allowed to assert a derivative claim on WB's behalf.

## B. Contribution

W&C presents no arguments regarding the contribution claim. Therefore, to the extent the Amended Answer asserts W&C committed malpractice by failing to seek contribution from O'Brate and AWI in the suits they brought against Beemiller, the Motion to Dismiss is denied.

## III. CONCLUSION

The Motion for Leave to File Surreply is **DENIED**. The Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. Specifically, it is granted to the extent it seeks dismissal of the counterclaim(s) based on W&C's failure to assert a shareholder derivative claim and denied with respect to Defendant's counterclaim premised on Plaintiff's alleged failure to pursue a claim for contribution.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
DATE: January 17, 2023
UNITED STATES DISTRICT COURT